IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY BOSI BREWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 4506 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Kathy Bosi Brewer ("Ms. Bosi")[3], has filed a motion for summary judgment and memorandum in support seeking reversal or remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") (doc. # 15: Pl.'s Mot. for Summ. J.; doc. # 16: Pl.'s Brief in Supp. of Her Mot. to Reverse the Decision of the Commissioner of Social Security ("Pl.'s Mem.")). The Commissioner has filed a motion for summary judgment seeking affirmance of the decision denying benefits (doc. # 26: Commissioner's Mot. for Summ. J.; doc. # 27: Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.")). Ms. Bosi also has filed a reply (doc. # 28: Pl.'s Reply to Def.'s Resp. and Mot. for Summ. J. ("Pl.'s Reply")). For the following reasons, we grant Ms. Bosi's motion for summary judgment and deny the Commissioner's motion to affirm.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On August 25, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 6).

[3] Plaintiff refers to herself in her brief as Ms. Bosi so we will as well.

# I.

Ms. Bosi was previously found disabled as of June 5, 2004, having met Listings 12.04 A and B, with a subsequent determination that her disability had ceased as of January 1, 2011 (R. 34, 976). Ms. Bosi's date last insured was December 31, 2012 (R. 1015). Ms. Bosi's Comparison Point Date ("CPD") – the most recent favorable medical decision finding her disabled – was December 20, 2004 (R. 979).

Ms. Bosi administratively appealed the termination of disability and subsequently attended a hearing on February 26, 2013; the termination was affirmed in a decision dated June 27, 2013 (R. 32, 1015). Ms. Bosi's request for review by the Appeals Council was denied and she then appealed the decision to the district court (R. 1015). The district court granted the Commissioner's agreed motion for reversal with remand on September 25, 2015 (R. 1101). A second hearing was held before a different Administrative Law Judge ("ALJ") on September 7, 2016 (R. 1011-88), who issued a decision on February 27, 2017, finding that Ms. Bosi was not disabled (R. 973-1001). Ms. Bosi did not file timely exceptions with the Appeals Council (Pl.'s Mem.1). The Appeals Council did not assume jurisdiction of the case. Thus, the ALJ's ruling was the final decision of the Commissioner. *See* 20 C.F.R. § 404.984.

Ms. Bosi argues that remand is warranted for three reasons: (1) that the ALJ erred in weighing medical opinion evidence from Drs. Bhalla and Boyenga; (2) that the ALJ erred in assessing Ms. Bosi's residual functional capacity ("RFC"); and (3) that the ALJ erred in assessing Ms. Bosi's subjective allegations that addressed the intensity, persistence, and limiting effects of her pain and symptoms (Pl.'s Mem. 7-19). We agree that the ALJ's treatment of the medical evidence for Dr. Boyenga requires remand. Because we remand on this basis, we focus our review of the extensive record on the evidence and analysis by the ALJ that are material to our decision.

2

## II.

Ms. Bosi testified at both hearings. In summary, Ms. Bosi testified that she underwent breast reduction surgery in April 2012 because she experienced pain in her neck, back, and shoulders and Dr. Burke advised her it would relieve the pressure on her shoulders (R. 1026-27). She stated the surgery helped "a little" (R. 1027).

Ms. Bosi also testified that she started going to the Laser Spine Institute in 2012 and they ultimately performed surgery on her neck and back in May 2013 (R. 1027-28). She testified that she "felt real bad" and "very very sick" with chronic pain prior to the surgery (R. 1028-29).

Following Ms. Bosi, the Medical Expert ("ME") Dr. Lee Alan Fischer, testified at the second hearing (R. 1066). The ME identified the impairments during the relevant time period of 2011-2012 as lumbosacral disc degenerative disease, fibromyalgia, obesity, chronic pain syndrome, and cervical spine degenerative disease (R. 1067). He testified first about the lumbar spine disease, and stated that the imaging in 2011 showed a previous spine surgery and degenerative disease; on physical examination, Ms. Bosi had tenderness of palpation of her lower back but no evidence of radiculopathy, and she had a normal electromyography ("EMG") (a diagnostic procedure to assess the health of muscles and the nerve cells that control them) (R. 525, 1067-68). The ME testified that his overall opinion was that Ms. Bosi was able to function during the time period and was capable of light work meaning she had the ability to lift, carry, stand and walk (R. 1068-69).

The ME further testified that none of Ms. Bosi's impairments met or medically equaled any of the listings (R. 1069). As for the cervical spine degenerative disease, the ME testified that Ms. Bosi did end up undergoing surgery in 2013, and the upper extremity EMG was normal in January 2011 (R. 1071).

3

Prior to Ms. Bosi's May 2013 lumbar and cervical spine surgeries, the ME testified that her RFC was for light work (R. 1072). The ME stated that he thought the surgeon was addressing Ms. Bosi's complaints with the surgery and that the surgeon must have determined there was a pathology in the spine that would have warranted the surgeries (*Id.*). The ME did not evaluate any potential mental impairments (R. 1080).

### III.

On February 27, 2017, the ALJ issued an opinion finding that Ms. Bosi's disability ended as of January 1, 2011 (R. 977, 1001). To evaluate whether Ms. Bosi continued to be disabled as of that date, the ALJ followed the eight-step evaluation process pursuant to 20 CFR 404.1594 (R. 978). The ALJ also referenced the district court remand order, which stated that the ALJ should: (1) address the onset, nature, and severity of the chronic fatigue syndrome as treated for by Dr. Bhalla; and (2) fully address state agency psychological consultant Dr. Boyenga's opinion (R. 976-77). In addressing those issues, the Appeals Council specifically directed the ALJ to: (1) give further consideration to the opinions of Dr. Bhalla and Dr. Boyenga and explain the weight given to their opinion evidence; (2) address the diagnosis and treatment of chronic fatigue syndrome; (3) evaluate Ms. Bosi's mental impairments in accordance with 20 CFR 404.1520a, and provide specific findings and appropriate rationale for each of the functional areas in 20 CFR 404.1520a(c); (4) give further consideration to Ms. Bosi's maximum physical and mental RFC; and, (5) if warranted, obtain supplemental evidence from a VE (R. 977).

At *Step One*, an ALJ must determine whether an applicant was engaged in substantial gainful activity ("SGA"). 20 CFR 404.1594(f)(1). Here, the ALJ determined that through January 1, 2011, Ms. Bosi completed a nine-month trial work period in 2009 and then engaged in SGA in January, March, April and June 2010 (R. 979-80).

4

At *Step Two*, an ALJ determines whether an applicant had an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart B, Appendix 1; if so, her disability would continue. 20 CFR 404.1594(f)(2). The ALJ found that the medical evidence established that as of January 1, 2011, Ms. Bosi had the medically determinable impairments of: depressive and somatic disorders, fibromyalgia, degenerative disc disease of the cervical and lumbosacral spine, a vision impairment, irritable bowel syndrome, obesity status-post bariatric surgery, history of stress incontinence and vaginal prolapse status-post tension-free vaginal tape insertion and removal, a remote history of kidney stones status-post lithotripsy, left foot tenosynovitis, and high cholesterol (R. 980). However, the ALJ also found that since January 1, 2011, Ms. Bosi did not have an impairment or combination of impairments which met or medically equaled the severity of a listing, even when taking into consideration her obesity (*Id.*).

The ALJ addressed Listing 1.04 in light of Ms. Bosi's degenerative disc disease. The ALJ noted that her straight-leg raise tests were always negative, her gait normal, and sensory examinations were normal, no muscle atrophy was present, and her grip and fine and gross manipulation were normal or intact (R. 981).

The ALJ then considered the severity of Ms. Bosi's mental impairments, and found both singly and in combination, they did not meet or medically equal the criteria of Listings 12.04 or 12.07 (R. 981). The ALJ considered whether the paragraph B criteria were satisfied and determined they were not because her mental impairments did not cause at least two "marked" limitations or one "extreme" limitation (R. 984). Additionally, the ALJ found that Ms. Bosi's mental impairments had improved since the CPD of December 20, 2004 (*Id.*).

In reaching this conclusion, the ALJ detailed the various paragraph B criteria. She found that Ms. Bosi had only mild limitations in understanding, remembering, or applying information, consistent with the opinion of State Agency consultant Kirk Boyenga, Ph. D., and other evidence (R. 981-82). The ALJ also determined that Ms. Bosi had mild limitations in interacting with others, consistent with Dr. Boyenga's opinion that there was no evidence of limitation or she was not significantly limited in any aspect of social interaction and his opinion was given weight (R. 982).

The ALJ gave little weight to Dr. Boyenga's December 2010 opinion that Ms. Bosi was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without unreasonable need for rest periods (R. 983). The ALJ discussed counseling records stating that Ms. Bosi reported concentrating being "hard" for her and poor as of January 2011, as well as with notes thereafter of Ms. Bosi being preoccupied with relationship issues with her mother, adult children, and significant others (*Id.*). However, the ALJ also pointed to the balance of counseling records noting that Ms. Bosi's thought process and content were within normal limits, and other provider reports describing Ms. Bosi as cooperative with reasonable thinking and normal attention span and concentration (*Id.*). The ALJ opined that the evidence of generally unremarkable findings at both December 2010 consultative examinations and the lack of evidence of ongoing issues with poor concentration that were briefly present in January 2011 failed to support Dr. Boyenga's finding of moderate limitations (*Id.*).

Last, the ALJ determined that Ms. Bosi also experienced mild limitations in adapting or managing herself (R. 983). The ALJ found that aside from Ms. Bosi's report of needing reminders with medication and stating that her ability to handle stress and change in routine was "not good," she denied anything other than physical impairments impacting her ability to care for herself and

noted she was able to care for a pet and helped her mother with household tasks like grocery shopping (*Id.*).

The ALJ found that Ms. Bosi's ability, in the presence of appropriate treatment, to adapt to major life changes taken, together with her mother's observations that Ms. Bosi was "good" in handling changes in routine, were more persuasive than the statement by Dr. Boyenga that Ms. Bosi's adaptation abilities were "somewhat limited" (R. 983-84). Thus, the ALJ also gave this portion of Dr. Boyenga's opinion little weight (R. 984).

The ALJ concluded that Ms. Bosi's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and that she did not have an impairment that met or medically equaled Listings 12.04 or 12.07 (R. 984). Further, because Ms. Bosi's mental impairments did not impose more than a mild level of limitation in any functional domain during the period in question, the ALJ concluded that Ms. Bosi's mental impairments had improved since the CPD (*Id.*).[4]

At *Step Three*, an ALJ determines whether medical improvement occurred and, if so, proceeds to *Step Four*; if not, the ALJ then proceeds to *Step Five* of the analysis. 20 CFR 404.1594(f)(3). Here, the ALJ determined that there was medical evidence to support that as of January 1, 2011, there was a decrease in medical severity of the impairments present at the time of the CPD; Ms. Bosi experienced medical improvement in her previously disabling impairments and the level of improvement persisted through her date last insured; and Ms. Bosi's previously disabling mental impairments improved to the extent they were no longer severe as of the date disability ended and they remained non-severe through the date last insured (R. 984).

---

[4] The ALJ also considered whether the paragraph C criteria were satisfied because Ms. Bosi's mental impairments were previously deemed severe (R. 984). The ALJ found that the evidence failed to establish the presence of the paragraph C criteria (*Id.*).

The ALJ found that as of January 1, 2011, Ms. Bosi's impairments present at the time of the CPD had decreased in medical severity to the point that Ms. Bosi had the RFC to perform light work requiring no more than frequent operation of hand controls with the right and left hands, no more than occasional climbing of ladders, ropes, or scaffolds, kneeling, and crouching, which avoided concentrated exposure to unprotected heights and moving mechanical parts, and permitted the claimant to be off-task up to fifteen percent of the time during an eight-hour workday in addition to normal breaks (R. 984). The ALJ was "abundantly clear" that as of January 1, 2011 medical improvement with regard to Ms. Bosi's previously disabling mental impairments had occurred – her impairments were non-severe as of that date and remained non-severe through her date last insured (R. 984-85). Because Ms. Bosi's mental impairments were non-severe, they did not impact her RFC through the date last insured (R. 985).

The ALJ did not consider the limiting effects of the evidence of impairments after the CPD in making the RFC assessment (R. 985). Rather, the ALJ considered the combined impact of Ms. Bosi's impairments present at the CPD (*Id.*). The ALJ found that Ms. Bosi's physical RFC was affected by only two severe impairments: fibromyalgia and degenerative disc disease of the lumbosacral spine (*Id.*). The ALJ did recognize that there were other physical impairments present at the time of the CPD; however, they were non-severe from January 1, 2011, the date disability ended, through the date last insured because they did not impose more than a minimal impact upon the claimant's ability to engage in basic work activity (*Id.*).

Turning to Ms. Bosi's severe impairments as of the CPD, fibromyalgia and degenerative disc disease of the lumbosacral spine ("DDD"), the ALJ found these impairments continued to impose more than a minimal impact upon Ms. Bosi's ability to engage in basic work activity from the date disability ended on January 1, 2011 through December 31, 2012, the date last insured (R.

986). But, the ALJ did not accept Ms. Bosi's allegations of symptoms consistent with DDD because the ALJ determined those allegations were not consistent with the objective medical evidence (*Id.*). In reaching this conclusion, the ALJ discussed imaging of Ms. Bosi's lumbar spine in August 2004 and then Ms. Bosi's "considerable improvement" at her December 2010 medical consultative examination, when the examiner noted that there was no "evidence of functional impairment" (*Id.*). "Some weight" was afforded this opinion by the ALJ because of its consistency with the assertion of significant medical improvement; however, the ALJ noted subsequent evidence did support ongoing limitation, such as early-2011 records noting continued reports of back pain despite medications including Cymbalta, Lyrica, Fentanyl patches, Methocarbamaol, and Voltaren cream as well as physical therapy beginning in mid-2011 (*Id.*).

The ALJ discussed Ms. Bosi's MRI scans in June 2011 that showed a history of apparent laminectomies at the L4-S1 vertebral levels but noted that her alignment remained "normal" (R. 986). The physical therapy records from May through June 2011 reflected improvement in her condition (*Id.*). The ALJ noted that Ms. Bosi's treating orthopedist, Dr. Komanduri, opined in December 2011 that her problems were not severe and were not at a level warranting surgery (R. 987).

The ALJ noted that, during an October 2012 exercise stress test, Ms. Bosi's back pain did not preclude her from sustaining ambulation for several minutes to the point of fatigue and shortness of breath (R. 987). Additionally, the ALJ discussed that despite a request for a referral to a spine specialist in August 2012, there is no evidence that Ms. Bosi pursued that referral prior to the date last insured (*Id.*). In October and December 2012, visits with Ms. Bosi's primary care physician noted no signs of tenderness (*Id.*). Finally, the ALJ noted that even when Ms. Bosi was seen at Laser Spine Institute in May 2013, "well after her date last insured," the objective medical

9

evidence noted no signs of atrophy, a normal gait, and normal muscle strength (*Id.*). Therefore, the ALJ was "compelled to conclude" that from January 1, 2011, through Ms. Bosi's date last insured December 31, 2012, she had experienced sustained medical improvement directly related to her back impairment and had the functional capacity to perform light work (*Id.*).

For the final analysis at *Step Three*, the ALJ reviewed Ms. Bosi's somatic issues and acknowledged they were noted in the State agency consultant's assessment of Ms. Bosi's mental functioning at the time of the CPD (R. 988). Included in her assessment was a review of the AMT Counseling records that noted somatic complaints in early 2011. However, unlike Ms. Bosi's pain behavior in 2004, her motor activity in the AMT Counseling notes was consistently described as within normal limits and decreased in frequency with the exception of late September and early October 2011, when Ms. Bosi's increase in somatic complaints coincided with her relationship issues with her significant other (*Id.*). The ALJ also discussed Ms. Bosi's trip to Texas, her complaints of persistent fatigue (but also her use of Ambien for help with sleep), Dr. Massoud's prescriptions of Fioricet and Augmentin in June 2012 for a fibromyalgia flare and headache, her normal blood work in fall 2012, her move to Arizona in December 2012, and AMT Counseling records that indicated no somatic symptomology from September 2012 through the date last insured (R. 988-89). The ALJ opined that based on Ms. Bosi's improvement in symptomology, her level of activity, and the lack of evidence of significant treatment beyond medication management, the somatic issues did not limit Ms. Bosi beyond the capacity of light work with some additional restrictions (R. 989).

At *Step Four*, an ALJ determines whether the medical improvement is related to the ability to work; if so, the analysis proceeds to the sixth step, skipping *Step Five*. 20 CFR 404.1594(f)(4). In this case, the ALJ determined that Ms. Bosi's medical impairment was related

to her ability to work because it resulted in limitation in her functional capacity (R. 989). However, the ALJ found that Ms. Bosi's RFC was less restrictive on January 1, 2011 then it was at the time of the CPD (*Id.*). The analysis then proceeded to the sixth step, because the ALJ found the medical improvement was related to the ability to work.

At *Step Six*, the ALJ determines whether Ms. Bosi's current impairments in combination were severe. 20 CFR 404.1594(f)(6). The ALJ determined that as of January 1, 2011, Ms. Bosi continued to have a severe impairment or combination of impairments (R. 989). Other than Ms. Bosi's depressive and somatic disorders, which the ALJ deemed non-severe as of January 1, 2011, Ms. Bosi's other impairments present at the CPD continued to cause her more than minimal limitation in her ability to perform basic work activity as of January 1, 2011 through the date last insured (*Id.*). The ALJ identified the severe impairments as DDD, fibromyalgia, and degenerative disc disease of the cervical spine (*Id.*).

The ALJ determined that based on Ms. Bosi's impairments present as of January 1, 2011, she had the RFC to perform light work with certain exceptions (R. 992). In reaching this finding, the ALJ followed a two-step process: she first determined that there was an underlying medically determinable physical or mental impairment that could have reasonably been expected to produce the alleged symptoms, and second, after evaluating the intensity, persistence, and limiting effects of Ms. Bosi's symptoms, the ALJ found that Ms. Bosi's statements concerning the effect of her impairments were not fully supported by the objective medical evidence (R. 992-96).

The ALJ further found that Ms. Bosi's July 2011 medical consultative examination was consistent with her documented improvement (R. 994-95), as was the December 2011 statement by Ms. Bosi's treating orthopedist, Dr. Komanduri, that "I do not think her problems are severe and I certainly do not think that they are surgical at this point" (R. 995). The ALJ noted that while

she did not interpret his use of the term "severe" to connote the meaning as used in the Social Security Act, Dr. Komanduri's opinion did support the conclusion that Ms. Bosi's back disorder, even in conjunction with her neck disorder, did not limit her capacity to perform light work (*Id.*).

The ME's opinion that Ms. Bosi's impairments did not meet or medically equal any listings and that she could perform light work was given "greater weight" by the ALJ to the extent it was consistent with the RFC, because the record supported Ms. Bosi's functional capacity for light work (R. 997). The ALJ assigned "no weight" to the January 2011 mental health assessment by AMT Counseling that Ms. Bosi could "potentially qualify" for SSI and Medicare because it was speculative in nature with no articulated rationale that concerned issues of disability that were reserved to the Commissioner (*Id.*).

The ALJ gave "little weight" to the opinions in Dr. Chen-Yang's letter of February 2013 stating she had treated Ms. Bosi for the past seven years and "[n]othing has changed in terms of her medical problems that caused her disability in the first place including her fibromyalgia, herniated disc, chronic fatigue syndrome, irritable bowel syndrome and depression" because it was inconsistent with the objective medical evidence at least since January 1, 2011 that indicated significant improvement in physical and mental symptomology (R. 998).

The ALJ reviewed the February 2013 statement by Dr. Bhalla, which opined that Ms. Bosi had "active disease with pain, spasm of muscles and fatigue" from impairments such as fibromyalgia, lumbar disc degeneration, and chronic fatigue syndrome, which prevented Ms. Bosi from performing "active work" (R. 998). The ALJ gave "little weight" to this opinion. The ALJ found that Ms. Bosi's diagnosis of chronic fatigue syndrome did not constitute a medically-determinable impairment, and that Dr. Bhalla's opinion that Ms. Bosi was unable to perform "active work" was so overly broad and unquantified that it was of little probative value in

determining the RFC. The ALJ cited to Dr. Bhalla's March 2013 letter wherein he stated that he could not "objectively measure" Ms. Bosi's level of pain, and fatigue and that a "functional capacities evaluation would be a better assessment of a person's specific quantitated abilities" (*Id.*). Dr. Bhalla also stated that the "exact number of hours for sitting, standing, and the amount of weight [Ms. Bosi] can lift is not in the scope of this practice" (*Id.*). The ALJ stated that these factors warranted her decision to give Dr. Bhalla's opinions "little weight" (*Id.*).

At *Step Seven*, an ALJ must assess whether an applicant's current RFC permits her to perform past relevant work. 20 CFR 404.1594(f)(7). Here, the ALJ determined that the record did not show that Ms. Bosi was able to perform past relevant work (R. 999).

At *Step Eight*, an ALJ determines whether there is other work the applicant can perform given her RFC, age, education, and past work experience. 20 CFR 404.1594(f)(8). In this case, the ALJ determined that considering Ms. Bosi's age, education, work experience, and RFC as of January 1, 2011 through the date last insured, Ms. Bosi was able to perform a significant number of jobs in the national economy (R. 999). Therefore, the ALJ found Ms. Bosi was "not disabled" and that her disability ended as of January 1, 2011 (R. 1000).

### IV.

We review the ALJ's decision to determine if it is supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v.*

*Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Here, the ALJ's treatment of the medical evidence for Dr. Boyenga requires remand.

The ALJ determined that Ms. Bosi's mental impairment did not meet or medically equal the criteria of Listings 12.04 and 12.07 (R. 981). In doing so, the ALJ evaluated the "paragraph B" criteria and specifically opined that Ms. Bosi had "mild" limitations in concentrating, persisting, or maintaining pace (R. 982).

By contrast, on December 9, 2010, less than one month prior to the date on which the ALJ found that Ms. Bosi was no longer disabled, Dr. Boyenga determined that Ms. Bosi had "moderate" difficulties in maintaining concentration, persistence, or pace (R. 385). In his assessment, Dr. Boyenga further determined that Ms. Bosi was "moderately limited" in (1) her ability to maintain attention and concentration for extended periods of time (R. 389); (2) her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, (3) her ability to respond appropriately to changes in the work setting (R. 390). Dr. Boyenga concluded that Ms. Bosi was capable of performing simple and detailed tasks; she had no problems with social skills; but her adaptation abilities were somewhat limited and only allowed routine, repetitive tasks; and she was able to follow directions and leave home alone (R. 391). The ALJ accorded "little weight" to these opinions (R. 983). In doing so, the ALJ mentioned Ms. Bosi's daily activities, her third-party function report, the December 2010 medical consultative examination, and Ms. Bosi's counseling records (R. 982-83).

Ms. Bosi argues that the ALJ made this finding without the benefit of any opinions or assessment of a mental health professional, and thus improperly substituted her own lay opinion for that of Dr. Boyenga (Pl.'s Mem at 14). The Commissioner disagrees and argues that the ALJ

14

properly discounted Dr. Boyenga's opinion because Dr. Boyenga did not have the opportunity to review "the record throughout the period in question," which was developed after his December 2010 assessment (Def.'s Mem at 15; R. 983).

To be sure, "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). But, the ALJ was not entitled to "play doctor" in order to make that judgment. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding the case where ALJ summarized medical exam results without input from an expert). That is what the ALJ did in this case. The ALJ improperly rejected Dr. Boyenga's finding of moderate limitations in concentration, persistence and pace based on her own review of medical evidence. The ALJ failed to secure the opinion of an additional medical expert, who could have reviewed the evidence that postdated Dr. Boyenga's review and offered an assessment of Ms. Bosi's mental RFC based on all of the evidence. *Moreno*, 882 F.3d at 729.

The ME who testified at the second hearing did not perform that function as he did not evaluate Ms. Bosi's mental impairments (R. 1080). As in *Moreno*, "[w]e cannot accept the agency's argument that the newer mental health records would not have made a difference because they showed improvement." 882 F.3d at 729. The more current counseling treatment notes reflected many occasions on which Ms. Bosi's mood was depressed (R. 480, 482, 484, 486, 488, 490, 492, 494, 498, 504, 506, 508, 510, 520, 581, 593, 595, 599, 601, 603) anxious (R. 504, 589, 593, 595, 599, 601), preoccupied (R. 589, 593, 595, 599, 601), or irritable (R. 597), and her thoughts reflected hopelessness (R. 480, 488, 581), being overwhelmed (R. 482, 484, 490, 500, 589), or suffered cognitive distortions (R. 494). While the ALJ acknowledged some of these findings, she explained that these feelings were situational and in response to "specific triggers"

(R. 982). However, that conclusion is one that the ALJ cannot make without venturing into the forbidden territory of "playing doctor."

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (doc. # 15, 16) is granted, and the Commissioner's request for affirmation of the ALJ's decision (doc. # 26, 27) is denied. We remand the case for further proceedings consistent with this opinion.[5] In light of our decision to remand on this ground, we do not address the other arguments raised by Plaintiff. However, we are concerned with the ALJ's handling of the evidence regarding the breast reduction surgery that Ms. Bosi underwent in April 2012 (prior to the date last insured) to alleviate pain in her back and the lumbar and cervical spinal surgeries she underwent in May and June 2013. We invite the ALJ to consider whether evidence of these surgeries that occurred either prior to the date last insured or shortly thereafter are probative of the pain and limitations Ms. Bosi experienced during the relevant time period.[6]

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATED:** February 28, 2019

---

[5] We reject Plaintiff's argument that benefits should be awarded, and rather, we remand the case to the Commissioner because while an award of benefits without remand is permissible, it is not "normally" done. *Mueller v. Astrue*, 493 Fed.Appx. 772, 777 (7th Cir. 2012). We are not prepared to find that the evidence establishes a disability that requires an award of benefits. Rather, we find that certain errors in the treatment of some of the evidence require a remand.

[6] *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008); *see also Hansen v. Berryhill*, No. 17 C 3131, 2018 WL 3458281 *3 (N.D. Ill. July 18, 2018) (holding the ALJ must consider relevant evidence that postdates the date last insured where the plaintiff's CT scan from "a mere four months after the date last insured" showed a variety of moderate to severe degenerative ailments that should have been considered by the ALJ); *Sierra v. Colvin*, No. 2:14-CV-298-TLS, 2016 WL 1128260 *4 (N.D. Ind. Mar. 23, 2016) (finding an ALJ must consider all of the evidence in the record including evidence arising after the date last insured) (collecting cases).